**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LUCILA MAGANA-MAGANA, | No. 23-1887 |
| *Petitioner*, | Agency No. A098-918-838 |
| v. | |
| PAMELA BONDI*, Attorney General, | ORDER AND AMENDED OPINION |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 24, 2024**
Phoenix, Arizona

Filed December 26, 2024
Amended February 19, 2025

Before: MILAN D. SMITH, JR., BRIDGET S. BADE, and
DANIELLE J. FORREST, Circuit Judges.

---

* We have substituted Attorney General Pamela Bondi as defendant-appellee pursuant to Federal Rule of Appellate Procedure 43(c).

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Order;
Opinion by Judge Milan D. Smith, Jr.

**SUMMARY**[***]

**Immigration**

Denying in part and dismissing in part Lucila Magana-Magana's petition for review a decision of the Board of Immigration Appeals, the panel held that the court has jurisdiction to review whether an alien showed "extraordinary circumstances" to waive the one-year motion-to-reopen deadline under the Violence Against Women Act (VAWA), but concluded that the BIA did not abuse its discretion in determining that Magana-Magana failed to meet that standard.

The panel explained that the Supreme Court established in *Wilkinson v. Garland*, 601 U.S. 209 (2024), and *Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020), that the application of a legal standard to undisputed facts—a mixed question—is a legal question this court can review pursuant to 8 U.S.C. § 1252(a)(2)(D). Accordingly, the panel concluded that the extraordinary-circumstances inquiry is a legal standard that can be applied to specific facts.

In reaching that conclusion, the panel rejected the Government's argument that the statute governing the VAWA waiver, 8 U.S.C. § 1229a(c)(7)(C)(iv)(III), commits

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the decision to the Attorney General's discretion. The panel explained that this language means that the ultimate waiver decision is discretionary; it does not mean that the antecedent question of extraordinary circumstances is unreviewable.

The panel also rejected the Government's contention that the term "extraordinary circumstances" is so undefined that it cannot guide judicial review for purposes of § 1252(a)(2)(D), concluding that the standard is akin to those found reviewable in *Guerrero-Lasprilla* and *Wilkinson*. Observing the lack of guiding statutory or regulatory factors here, the panel explained that there is no requirement that the standard be exhaustively defined by statute or regulation, and that, in other contexts, courts routinely decide whether "extraordinary circumstances" exist.

Finally, the Government suggested that, even if the jurisdiction-stripping provisions were inapplicable, the court would lack jurisdiction because there is no law to apply. The Government pointed to *Ekimian v. INS*, 303 F.3d 1153 (9th Cir. 2002). There, although the BIA had expressed unwillingness to reopen sua sponte absent "exceptional situations," this court held that it lacked jurisdiction to review the sua sponte determination because the governing regulation provides no standard. The panel declined to extend *Ekimian* here, where the legal standard comes directly from the plain text of the statute and is one with which courts are familiar.

On the merits, the panel rejected Magana-Magana's contention that the BIA applied the wrong standard, explaining that the BIA's single reference to "exceptional"

circumstances, rather than "extraordinary," was a clerical error.

The panel also concluded that BIA did not abuse its discretion in determining that Magana-Magana did not establish "extraordinary circumstances." Quoting *Wilkinson* and noting the fact-bound nature of the mixed question here, the panel applied a deferential standard of review. The panel concluded that the BIA did not abuse its discretion in concluding that the abuse Magana-Magana suffered did not constitute "extraordinary circumstances," and, in any event, there was no basis to conclude that extraordinary circumstances caused the delay in filing her motion.

Finally, the panel rejected Magana-Magana's other arguments, concluding that she failed to exhaust her equitable-tolling argument and that the court lacks jurisdiction to review the BIA's purely discretionary decision not to reopen sua sponte here.

---

## COUNSEL

Lucila Magana-Magana, Pro Se, Wilcox, Arizona; Lilia G. Alcaraz and Ronald Tocchini, Alcaraz Tocchini LLP, Phoenix, Arizona; for Petitioner.

Paul F. Stone and Claire L. Workman, Senior Litigation Counsel; Ethan B. Kanter and Melissa Neiman-Kelting, Assistant Directors; Office of Immigration Litigation; Brett A. Shumate, Acting Assistant Attorney General; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Petitioner.

## ORDER

Respondent's motion to clarify or amend (Dkt. No. 53) is GRANTED.  The corrected opinion filed January 2, 2025, is hereby amended.  The amended opinion will be filed concurrently with this order.  No future petitions for rehearing or rehearing en banc will be entertained.

## OPINION

M. SMITH, Circuit Judge:

Lucila Magana-Magana, a citizen of Mexico, seeks review of a decision of the Board of Immigration Appeals (BIA) denying her request to reopen her immigration removal proceedings.  The BIA refused to consider Magana-Magana's request because it was filed outside of the one-year period provided by the Violence Against Women Act (VAWA), and Magana-Magana had not shown extraordinary circumstances that would warrant overlooking the untimeliness of her filing.  *See* 8 U.S.C. § 1229a(c)(7)(C)(iv)(III).  Seeking review from our court, Magana-Magana argues, *inter alia*, that the BIA erred in determining that she had not shown extraordinary circumstances that would justify excusing the untimeliness of her motion to reopen.

The parties dispute whether we have jurisdiction to review the BIA's extraordinary-circumstances determination, and our sister circuits are divided on the question.  We agree with Magana-Magana that we do have jurisdiction to review the BIA's extraordinary-circumstances determination.  Ultimately, though, we agree

with the Government that the BIA's determination that Magana-Magana failed to show extraordinary circumstances must stand. As to Magana-Magana's other arguments, we (1) conclude that the BIA did not apply the wrong legal standard; (2) decline to reach the merits of Magana-Magana's equitable-tolling claim because it is not exhausted, and (3) lack jurisdiction to review the BIA's decision not to reopen removal proceedings *sua sponte*.

We accordingly deny Magana-Magana's petition for review in part and dismiss it in part for lack of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Magana-Magana's Unlawful Entry and Removal Proceedings

Lucila Magana-Magana's life from an early age has been marked by a tragic pattern of abuse and victimization. Magana-Magana was born in Mexico in 1958 or 1959. When Magana-Magana was fifteen years old, she was sexually assaulted and became pregnant. She lived with her assailant for three years and had additional children with him.

After the death of her assailant in a drug-related shooting, Magana-Magana entered into a relationship with Rafael Camacho, a supervisor at the greenhouse where she worked. But although Magana-Magana and Camacho had several children together, this relationship turned abusive. Camacho became addicted to drugs and alcohol, and he began to physically abuse Magana-Magana. Camacho also became increasingly controlling and would lock Magana-Magana in their home. Magana-Magana eventually escaped the relationship, only to be attacked by Camacho when she

returned to her hometown. She also heard rumors that Camacho was trying to find and kill her.

Frightened of Camacho, Magana-Magana fled to the United States. She entered the United States unlawfully in 1995 along with a few of her children. Magana-Magana subsequently had an additional three children with a man in Wilcox, Arizona. This relationship, too, became physically abusive.

In 2007, Magana-Magana and one of her adult children were arrested by officers of the U.S. Border Patrol. The Department of Homeland Security issued Magana-Magana a Notice to Appear in removal proceedings. At a hearing held before an immigration judge (IJ), Magana-Magana conceded removability and admitted to the allegations in the Notice to Appear.

Magana-Magana then filed an application for cancellation of removal pursuant to section 240A(b) of the Immigration and Nationality Act (INA), *see* 8 U.S.C. § 1229b(b)(1), on the grounds that it would result in "exceptional and extremely unusual hardship" to three of her minor children, who were United States citizens. The IJ issued an order on October 30, 2007, denying Magana-Magana's request to cancel removal.[1]

Magana-Magana appealed to the BIA, which upheld the IJ's ruling and dismissed the appeal. Magana-Magana sought review in our court, but we concluded in an unpublished memorandum decision that we "lack[ed] jurisdiction to review the agency's discretionary

---

[1] The IJ granted Magana-Magana the right to voluntarily depart. But the record indicates that Magana-Magana did not voluntary depart after the decision became final.

determination that Magana-Magana failed to show exceptional and extremely unusual hardship to a qualifying relative." *Magana-Magana v. Holder*, 421 F. App'x 682, 682 (9th Cir. 2011) (mem.).[2]  The mandate issued on May 3, 2011.

## II. Magana-Magana's Relationship with Clyde Wakefield

In late 2011, Magana-Magana began living with an Arizona man, Clyde Wakefield.  Wakefield and Magana-Magana were ultimately married in March 2017.

Unfortunately, consistent with the pattern in Magana-Magana's life, the relationship quickly turned abusive.  Even from the beginning of their relationship, Wakefield abused Magana-Magana by verbally and physically assaulting her. Wakefield would coerce Magana-Magana into forgiving him and having sexual relations with him by threatening to have her deported.  Magana-Magana felt "trapped" in the abusive relationship.

Things came to a head in April 2020.  After a quarrel, Wakefield told Magana-Magana that she had to leave.  When Magana-Magana refused and protested, Wakefield "became enraged" and physically assaulted her, grabbing Magana-Magana by the throat and choking her.  Magana-Magana was "sure" that Wakefield was going to murder her because she "saw a killing light in his eyes that frightened [her] in a way that never had before."  Wakefield then threw Magana-Magana on the ground.  He also said that he was going to divorce her and threatened that he would "have the Border Patrol deport" Magana-Magana if she complained to

---

[2]  Magana-Magana's first name was spelled as "Lucia" in the memorandum disposition. *See Magana-Magana*, 421 F. App'x at 682.

law enforcement about his abuse. Magana-Magana moved out after that fight, and the pair ultimately began divorce proceedings several months later.[3]

## III. Magana-Magana's Petition to Reopen

In January 2022, Magana-Magana filed a motion with the BIA requesting that her removal proceedings be reopened and that her removal be stayed. Magana-Magana explained that she had filed an application with the U.S. Citizenship and Immigration Service for benefits under the VAWA. According to Magana-Magana, she qualified for immigration benefits, including the cancellation of removal, based on the abuse that Wakefield inflicted on her.

As Magana-Magana acknowledged, because she had already been placed into removal proceedings, the BIA "retain[ed] primary jurisdiction to consider any request . . . for VAWA relief." *See* 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(a), (c)(4). Thus, she would have to convince the BIA to reopen her removal proceedings. Magana-Magana argued that the proceedings should be reopened because evidence of her abuse at the hands of Wakefield was "material to the Board's consideration of her motion" to reopen and "[t]he facts and circumstances recited by [Magana-Magana's] current VAWA claims were not available to her or the Board during prior proceedings."

Magana-Magana faced a significant hurdle because her motion to reopen was filed well outside of the one-year filing period provided by statute. *See* 8 U.S.C. § 1229a(c)(7)(C)(iv)(III). Magana-Magana admitted as much, but she argued that the severity of the abuse inflicted

---

[3] The record is inconsistent as to when Magana-Magana and Wakefield became legally divorced.

on her by Wakefield—as well as the domestic violence she was subjected to throughout her life—constituted extraordinary circumstances that should excuse her untimeliness.

The BIA denied Magana-Magana's motion in a written order issued on July 20, 2023. The BIA observed that "[t]he motion to reopen is untimely since it was filed over 1 year [after] the entry of the final order of removal." Pursuant to 8 U.S.C. § 1229a(c)(7)(C)(iv)(III), the BIA then considered whether Magana-Magana had "demonstrated extraordinary circumstances or extreme hardship to her children to waive the time limitation." It ultimately concluded that she had not, writing:

> The respondent has not presented sufficient evidence of exceptional circumstances to establish that her motion falls within the exception to the 1-year filing requirement. The respondent married her husband in 2017, over 8 years after the final removal order, and filed for divorce in 2020, but did not file this motion to reopen until 2022. While we recognize and are sympathetic that the respondent alleges that she has been the victim of domestic violence both in Mexico and in the United States, has family ties to this country, and has depression, we do not consider her claims, cumulatively considered, sufficiently persuasive to

demonstrate extraordinary circumstances to waive the extended filing deadline.

(Citations omitted). The BIA also concluded that it would not exercise its discretionary authority to reopen Magana-Magana's removal proceedings *sua sponte*.

Magana-Magana timely seeks review of the BIA's decision.

## **ANALYSIS**

Magana-Magana's petition to reopen derives from her request for relief under the VAWA. Under the VAWA, abused and battered alien spouses or children of U.S. citizens or permanent residents are eligible for certain immigration benefits, including cancellation of removal and adjustment of status to lawful permanent resident. *See* 8 U.S.C. § 1229b(b)(2); *see also Jaimes-Cardenas v. Barr*, 973 F.3d 940, 943 (9th Cir. 2020). "[The] VAWA 'was a generous enactment, intended to ameliorate the impact of harsh provisions of immigration law on abused women . . . .'" *Garcia-Mendez v. Lynch*, 788 F.3d 1058, 1062 (9th Cir. 2015) (quoting *Lopez-Birrueta v. Holder*, 633 F.3d 1211, 1215–16 (9th Cir. 2011)).

Additionally, the VAWA extended the time for certain aliens to file motions to reopen removal proceedings. "Under our immigration laws, '[a]n alien ordered to leave the country has a statutory right to file a motion to reopen his removal proceedings." *Hernandez-Ortiz v. Garland*, 32 F.4th 794, 800 (9th Cir. 2022) (alteration in original) (quoting *Mata v. Lynch*, 576 U.S. 143, 144 (2015)); *see also* 8 U.S.C. § 1229a(c)(7)(A). "The motion to reopen is an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." *Kucana v.*

*Holder*, 558 U.S. 233, 242 (2010) (quoting *Dada v. Mukasey*, 554 U.S. 1, 18 (2008)).

In most cases, a motion to reopen must be filed within ninety days of the final removal order. *See* 8 U.S.C. § 1229a(c)(7)(C)(i). But, under the VAWA, an individual classified as an abused spouse who is subject to a final removal order has one year in which to file for reopening of a removal proceeding. *See* 8 U.S.C. § 1229a(c)(7)(C)(iv)(III); *see also Yasin v. Att'y Gen. of the U.S.*, 20 F.4th 818, 822 (3d Cir. 2021).

The one-year time limit for filing a motion to reopen is not ironclad. Under the VAWA, "the Attorney General may, in the Attorney General's discretion, waive this time limitation in the case of an alien who demonstrates extraordinary circumstances or extreme hardship to the alien's child." 8 U.S.C. § 1229a(c)(7)(C)(iv)(III).

Additionally, in all removal cases (including those not covered by the VAWA), the BIA has the authority to reopen a removal proceeding *sua sponte*; specifically, it "may at any time reopen or reconsider on its own motion any case in which it has rendered a decision." 8 C.F.R. § 1003.2(a).

Magana-Magana challenges the BIA's order concluding that she failed to show the requisite "extraordinary circumstances" to waive the untimeliness of her motion to reopen.[4] She first argues that the BIA applied the wrong legal standard and that it erred in concluding that her circumstances were not extraordinary within the meaning of

---

[4] Although the Attorney General may also waive the one-year time limitation if the alien can demonstrate "extreme hardship to the alien's child," 8 U.S.C. § 1229a(c)(7)(C)(iv)(III), Magana-Magana does not argue that such hardship exists here.

the statute.  She then argues that the BIA erred because it should have applied equitable tolling and because it should have reopened her removal proceedings *sua sponte*.

## I.  Jurisdiction to Review the BIA's Extraordinary-Circumstances Determination

Before reaching whether the BIA erred in concluding that Magana-Magana had not demonstrated the necessary extraordinary circumstances to justify overlooking the untimeliness of her motion to reopen, we must first ensure that we have jurisdiction.  *See Mendoza-Linares v. Garland*, 51 F.4th 1146, 1153 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 1392 (2024).   Federal courts are courts of limited jurisdiction, and the key question presented here is whether the subject-matter jurisdiction granted by Congress encompasses the dispute at hand.  *See id.*

The Government insists that, considering the jurisdiction-stripping provisions of the INA, we lack jurisdiction to review the BIA's conclusion that Magana-Magana had not demonstrated extraordinary circumstances that would justify excusing the untimeliness of her motion to reopen pursuant to § 1229a(c)(7)(C)(iv)(III).  For her part, Magana-Magana argues that the applicability of the extraordinary-circumstances standard is a mixed question of law and fact over which we have jurisdiction.

Our sister circuits are divided on the question of whether we have jurisdiction to review the BIA's determination that an alien failed to show extraordinary circumstances. *Compare Yasin*, 20 F.4th at 822–24 (concluding that there was no jurisdiction to review the BIA's decision that a petitioner had failed to show the extraordinary circumstances or extreme hardship necessary to justify waiver of the one-year time limit under the VAWA), *and*

*Joseph v. Lynch*, 793 F.3d 739, 741 (7th Cir. 2015) (same), *with Pena-Lopez v. Garland*, 33 F.4th 798, 802–06 (5th Cir. 2022) (concluding that the court had jurisdiction because application of the extraordinary-circumstances standard was a question of law).  We have not yet addressed this question in a precedential case—although we have answered it in the affirmative in a non-precedential disposition.  *See Cardenas v. Lynch*, 669 F. App'x 354, 355 (9th Cir. 2016) (mem.).**[5]**

We take this opportunity to address the issue directly and explain why, particularly considering recent Supreme Court instruction on the topic, we have jurisdiction to review the BIA's extraordinary-circumstances determination.

### A.  Applicable Law

"In the immigration context, Congress has 'sharply circumscribed' the scope of judicial review of certain BIA decisions." *Zia v. Garland*, 112 F.4th 1194, 1199 (9th Cir. 2024) (quoting *Patel v. Garland*, 596 U.S. 328, 332 (2022)). Specifically, although "8 U.S.C. § 1252 generally grants federal courts the power to review final orders of removal," Congress has stripped courts of jurisdiction over two types of removal orders.  *Id.*   "First, § 1252(a)(2)(B)(i) bars judicial review of any BIA 'judgment regarding the granting of relief' under certain enumerated sections." *Id.*  Second,

---

[5] Without discussing the jurisdictional issue, we have reached the merits of the BIA's extraordinary-circumstances determination in unpublished memorandum decisions. *See, e.g.*, *Singh v. Sessions*, 705 F. App'x 636, 637 (9th Cir. 2017) (mem.).  Besides being non-precedential, none of these decisions actually addressed the jurisdictional issue before us here, so they do not resolve it. *See United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) ("[Q]uestions which merely lurk in the record, neither brought to the attention of the court not ruled upon, are not to be considered as having been so decided as to constitute precedents." (quoting *United States v. Ped*, 943 F.3d 427, 434 (9th Cir. 2019))).

and more germane to this case, "§ 1252(a)(2)(B)(ii) prevents [judicial] review of 'any other decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General." *Id.*

But that is not the end of the story. In § 1252(a)(2)(D), sometimes referred to as the "Limited Review Provision," Congress restored "the jurisdiction of federal courts to review 'constitutional claims or questions of law.'" *Id.* (quoting *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 225 (2020)). In three recent decisions, the Supreme Court has addressed the scope of this provision and its interplay with the INA's jurisdiction-stripping provisions.

First, in *Guerrero-Lasprilla v. Barr*, the Supreme Court concluded that "questions of law" as used in § 1252(a)(2)(D) "includes the application of a legal standard to undisputed or established facts." 589 U.S. at 225. Like this case, *Guerrero-Lasprilla* involved petitioners who sought to excuse the untimeliness of a motion to reopen removal proceedings (albeit, not a motion brought under the VAWA). *See id.* at 225–26. The *Guerrero-Lasprilla* petitioners contended that the BIA should equitably toll the general ninety-day time limit for filing a motion to reopen. *See id.* The BIA denied the petitioners' request for equitable tolling on the ground that they had failed to demonstrate the requisite due diligence. *See id.* at 226. The Supreme Court concluded that § 1252(a)(2)(D) provided jurisdiction to review the BIA's decision on the due diligence issue because it presented a "'mixed question of law and fact'"—in other words, a question involving "the application of law to undisputed or established facts." *Id.* at 228 (citing *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 394 (2018)). Moreover, such an inquiry qualified as a

"question[] of law" within the scope of § 1252(a)(2)(D).  *See id.*

Next, in *Patel v. Garland*, the Supreme Court built on *Guerrero-Lasprilla* and concluded that § 1252(a)(2)(B)(i) strips courts of jurisdiction to review "facts found as part of discretionary-relief proceedings" and that § 1252(a)(2)(D) did not restore jurisdiction to review such factfinding.  596 U.S. at 339, 347.  Examining *Patel*, we concluded that its logic naturally extended to facts underlying the discretionary decisions referred to in § 1252(a)(2)(B)(ii) as well.  *See Zia*, 112 F.4th at 1200–01.

Most recently, in *Wilkinson v. Garland*, 601 U.S. 209 (2024), the Supreme Court applied the rule of *Guerrero-Lasprilla* to a situation in which a petitioner sought cancellation of removal (as Magana-Magana had done in 2007).  *See* 601 U.S. at 211–12.  To be eligible for cancellation of removal under the provision at issue in *Wilkinson*, the petitioner was required to demonstrate that his or her "removal would result in 'exceptional and extremely unusual hardship' to a U.S.-citizen or permanent-resident family member."  *Id.* (quoting 8 U.S.C. § 1229b(b)(1)(D)).  The Supreme Court concluded that § 1252(a)(2)(D) provided jurisdiction to review an IJ's determination that the petitioner failed to show the necessary exceptional hardship.  *Id.* at 222.  The *Wilkinson* Court reasoned that "[t]he application of a statutory legal standard (like the exceptional and extremely unusual hardship standard) to an established set of facts is a quintessential mixed question of law and fact," and "*Guerrero-Lasprilla v. Barr* held that such questions are reviewable under § 1252(a)(2)(D)."  *Id.* at 212.  The Court reached this conclusion even though the hardship showing was antecedent to the purely discretionary question of whether

the IJ would cancel the petitioner's removal.  *See id.* at 218 ("The hardship determination in this case was not discretionary.  Because the IJ held that [the alien's child's] hardship did not satisfy the statutory eligibility criteria, he never reached the second step and exercised his unreviewable discretion to cancel or decline to cancel [the alien's] removal.").

## B.  Application

The Supreme Court's guidance in its recent cases— particularly *Wilkinson* and *Guerrero-Lasprilla*—clearly mark our path forward.[6]  The application of a legal standard to an undisputed set of facts—also called a mixed question of law and fact—is a question of law over which we have jurisdiction pursuant to § 1252(a)(2)(D).  *See Wilkinson*, 601

---

[6] During the pendency of this case, the Supreme Court decided *Bouarfa v. Mayorkas*, No. 23-583, --- S. Ct. ----, 2024 WL 5048700 (Dec. 10, 2024), which concluded that the Secretary of Homeland Security's decision to revoke initial approval of a visa petition based on "good and sufficient cause" is a discretionary decision that courts lack jurisdiction to review.  2024 WL 5048700 at *2–3.  Although *Bouarfa* discusses when an agency decision is discretionary within the meaning of the INA's jurisdiction-stripping provisions, it sheds little light on the question at issue here.  *First*, the parties in *Bouarfa* agreed that their case "d[id] not implicate" § 1252(a)(2)(D), the provision of the INA restoring jurisdiction over questions of law.  *See id.* at *3 n.2.  In contrast, § 1252(a)(2)(D) is crucial to our analysis here.  *Second*, the statute at issue in *Bouarfa* makes clear that what constitutes "good and sufficient cause" is solely in the discretion of the Secretary of Homeland Security. *See id.* at *5.  Specifically, *Bouarfa* concerned § 1155, which provides that "[t]he Secretary of Homeland Security may, at any time, *for what he deems to be good and sufficient cause*, revoke the approval of any petition approved by him under section 1154 of this title."  8 U.S.C. § 1155 (emphasis added).  The statute at issue here lacks similar indicia that what constitutes "extraordinary circumstances" is solely a matter of agency discretion.  *See* 8 U.S.C. § 1229a(c)(7)(C)(iv)(III).

U.S. at 211–12; *Guerrero-Lasprilla*, 589 U.S. at 225. That is true even if application of the legal standard "requires close engagement with the facts." *Wilkinson*, 601 U.S. at 212.

That is precisely what is present here: the extraordinary-circumstances inquiry under § 1229a(c)(7)(C)(iv)(III) is a legal standard that can be applied to specific facts. *See Husyev v. Mukasey*, 528 F.3d 1172, 1178–79 (9th Cir. 2008) (concluding that application of the extraordinary-circumstances standard in an asylum statute was a mixed question of law and fact). This remains true even though determining whether specific facts give rise to extraordinary circumstances may be a fact-intensive inquiry. *See Wilkinson*, 601 U.S. at 221–22.

Our conclusion accords with the persuasive reasoning of the only circuit court to have thoroughly considered the impact of the Supreme Court's recent decisions. The Fifth Circuit, in *Pena-Lopez v. Garland*, 33 F.4th at 802–06, addressed the precise question at issue here in light of *Guerrero-Lasprilla*: whether it had jurisdiction over the BIA's conclusion that an alien had not shown the requisite extraordinary circumstances or extreme hardship to excuse the untimeliness of a motion to reopen. The Fifth Circuit concluded that it had jurisdiction because there was a legal standard against which to judge the BIA's decision— "extraordinary circumstances or extreme hardship to the alien's child." *Id.* at 805. Specifically, it explained that "[s]ection 1229a(c)(7)(C)(iv)(III) . . . asks the Attorney General to apply a legal standard to a set of facts. If the facts are undisputed, then under *Guerrero-Lasprilla*, we have jurisdiction to review the application of that standard to a set of facts." *Id.* (footnote omitted).

We agree with the reasoning in *Pena-Lopez*, and we conclude that it represents the best reading of the Supreme Court's recent decisions. Indeed, the Supreme Court's *Wilkinson* decision, which came after *Pena-Lopez*, provides even more support for this conclusion. *See* 601 U.S. at 212 ("The application of a statutory legal standard (like the exceptional and extremely unusual hardship standard) to an established set of facts is a quintessential mixed question of law and fact."). In contrast, the decisions from other circuits concluding that there is no jurisdiction to review the BIA's extraordinary-circumstances determination do not reckon with the Supreme Court's recent caselaw and rely on reasoning that the Supreme Court has since rejected. For example, the Third Circuit's opinion in *Yasin* reasoned that, to be reviewable, a question of law had to present a "purely legal inquir[y]." 20 F.4th at 824 (alteration in original) (quoting *Rachak v. Att'y Gen.*, 734 F.3d 214, 216 (3d Cir. 2013)). The Supreme Court has since rejected that reasoning. *See Guerrero-Lasprilla*, 589 U.S. at 230 ("Consider next [§ 1252(a)(2)(D)'s] immediate statutory context. That context belies the . . . claim that 'questions of law' refers only to 'pure' questions and necessarily excludes the application of law to settled facts.").

In arguing against this common-sense application of *Wilkinson* and *Guerrero-Lasprilla*, the Government makes several arguments. None is availing.

*First*, the Government contends that § 1229a(c)(7)(C)(iv)(III) expressly commits the question of whether there are extraordinary circumstances to the Attorney General's discretion, so this is not one of the circumstances in which jurisdiction is restored by § 1252(a)(2)(D). But the Government misreads the statute. What the express discretionary language in the statute means

is that the *ultimate* decision of whether to waive the one-year time limit for an untimely VAWA motion to reopen constitutes an exercise of discretion. *See* 8 U.S.C. § 1229a(c)(7)(C)(iv)(III) (committing the decision of whether to "waive" the one-year time limitation to "the Attorney General's discretion"). It does *not* mean that the antecedent question of whether the petitioner has demonstrated the necessary requirements to even be eligible for such discretionary relief—*viz.*, whether the alien has shown extraordinary circumstances or extreme hardship to his or her children—is an unreviewable discretionary question. To the contrary, we have jurisdiction to review the application of the extraordinary-circumstances standard even though it is antecedent to a discretionary decision.

This conclusion follows naturally from *Wilkinson*. There, the Supreme Court addressed a slightly different statutory scheme that proceeded in two steps: first, the IJ would determine whether the alien had shown the necessary "exceptional and extremely unusual hardship" to the alien's child. *Wilkinson*, 601 U.S. at 217. If so, the IJ would then proceed to the second stage and determine whether to cancel renewal. *See id.* at 218. The *Wilkinson* Court concluded that it had jurisdiction to review the IJ's hardship determination, reasoning that "[b]ecause the IJ held that [the alien's child's] hardship did not satisfy the statutory eligibility criteria, he never reached the second step and exercised his unreviewable discretion to cancel or decline to cancel [the alien's] removal." *Id.* The two-step approach from *Wilkinson* applies equally to the statute at issue here and indicates that we have jurisdiction to review the application of the extraordinary-circumstances standard— notwithstanding the fact that the ultimate grant of relief is within the Attorney General's discretion.

We find further support in *Pena-Lopez*, which reads the statute at issue and *Wilkinson* in the same manner as we do. In *Pena-Lopez*, the Fifth Circuit concluded that although the court had jurisdiction to review the BIA's extraordinary-circumstances determination, it did "not have . . . jurisdiction to review the ultimate, discretionary decision of whether to grant relief assuming the alien does meet the legal standard required in the statute." 33 F.4th at 805. We agree, and we accordingly conclude that the language in § 1229a(c)(7)(C)(iv)(III) granting the Attorney General discretion to waive the one-year time limitation does not insulate the antecedent extraordinary-circumstances determination from review as a question of law.

*Second*, the Government argues that the "extraordinary circumstances" referred to in 8 U.S.C. § 1229a(c)(7)(C)(iv)(III) does not provide a "reviewable legal standard," so § 1252(a)(2)(D) "does not restore jurisdiction over [Magana-Magana's] disagreement with the Board's extraordinary circumstances determination." Put differently, the Government contends that the term "extraordinary circumstances" is so vague and undefined that it cannot provide the necessary guideposts to review the BIA's decision for purposes of § 1252(a)(2)(D).

Again, we disagree. The "extraordinary circumstances or extreme hardship to the alien's child" standard in § 1229a(c)(7)(C)(iv)(III) is akin to the due-diligence standard analyzed in *Guerrero-Lasprilla* and the "exceptional and extremely unusual hardship" standard analyzed in *Wilkinson*—a legal standard that is applied to a set of facts. As *Pena-Lopez* explained, the statute at issue "grants the Attorney General discretion to take an action—but qualifies that discretion with a legal standard," namely

"extraordinary circumstances or extreme hardship to the alien's child."  33 F.4th at 804–05.

The Government is correct that, in *Wilkinson*, the "exceptional and extremely unusual hardship" standard was guided by a number of specific factors set out by the BIA. *See* 601 U.S. at 215, 222.  So was the asylum-specific "extraordinary circumstances" standard discussed in *Husyev*, 528 F.3d at 1180–81.  In contrast, there are no statutory or regulatory factors to guide us or the BIA in applying the extraordinary-circumstances standard at issue here.  But there is simply no requirement in the case law (including in *Wilkinson* or *Husyev*) that the legal standard at issue have been exhaustively defined by statute or regulation.  After all, there was no statutory or regulatory definition of "due diligence" in *Guerrero-Lasprilla*, 589 U.S. at 227.  Moreover, the Government's argument that "extraordinary circumstances" is too vague to provide useful guideposts for judging the BIA's decision also ignores the fact that, in other contexts, courts routinely determine whether "extraordinary circumstances" exist.  *See, e.g.*, *Smith v. Davis*, 953 F.3d 582, 588–89 (9th Cir. 2020) (en banc) (discussing the extraordinary-circumstances standard in the doctrine of equitable tolling).

*Third*, and relatedly, the Government suggests that even if the jurisdiction-stripping provision were inapplicable, we would lack jurisdiction because we "lack jurisdiction 'where statutes are drawn in such broad terms that in a given case there is no law to apply.'"  *Diaz-Covarrubias v. Mukasey*, 551 F.3d 1114, 1118–19 (9th Cir. 2009) (quoting *Alcaraz v. INS*, 384 F.3d 1150, 1161 (9th Cir. 2004)).

The Government is correct that, in "rare instances," a statute may be drawn "in such broad terms that in a given

case there is no law to apply." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (quoting *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 410 (1971)). And "[i]f there is no law to apply, the issue presumably would not present a 'question of law' within the meaning of" § 1252(a)(2)(D). *Husyev*, 528 F.3d at 1180.

We conclude, though, that this is not one of those rare circumstances: the statute at issue clearly articulates a standard—"extraordinary circumstances or extreme hardship to the alien's child"—that constitutes the relevant law to apply. 8 U.S.C. § 1229a(c)(7)(C)(iv)(III). And "extraordinary circumstances" is a standard that courts are familiar with in a variety of contexts, which supports the conclusion that it represents a functional legal standard. *Cf. Poursina v. U.S. CIS*, 936 F.3d 868, 874 (9th Cir. 2019) (comparing a "good cause" standard, which federal courts are familiar with and thus might impose an "administrable legal standard" rendering the decision judicially reviewable, with a "national interest" standard that is too broad and unfamiliar to do so).

To support its argument, the Government points to our decision in *Ekimian v. INS*, 303 F.3d 1153 (9th Cir. 2002). In *Ekimian*, the governing regulation permitted the BIA to "at any time reopen or reconsider on its own motion any case in which it has rendered a decision." 303 F.3d at 1156 (emphasis omitted) (quoting 8 C.F.R. § 3.2(a)). That regulation never identified any legal standard limiting the BIA's discretion. Although the BIA had previously expressed an unwillingness to exercise its discretion to reopen proceedings absent "*exceptional situations*," *id.* at 1157 (quoting *In re J-J-*, 21 I. & N. Dec. 976, 984 (B.I.A. 1997)), we lacked jurisdiction because "[t]he text of [the regulation] does not provide a standard controlling or

directing the BIA's decision whether to reopen, and similarly provides no standard for reviewing the BIA's decision," *id.* at 1157–58; *see also id.* at 1158 ("We do not believe that an acknowledgment by the BIA that it may reopen proceedings, and a statement that it will do so under 'exceptional situations,' without more, authorizes us to review the BIA's decision for abuse of discretion.").

We decline to extend the logic of *Ekimian* here, where the "extraordinary circumstances" test comes directly from the plain text of the statute at issue. And, as we noted above, the standard applied here is one with which courts are familiar. We thus conclude that this is not one of the "rare" instances in which there is no law to apply. *Heckler*, 470 U.S. at 830.

Accordingly, we conclude that we have jurisdiction to review the BIA's determination that Magana-Magana failed to show the requisite extraordinary circumstances.

## II. Challenges to the Merits

Having assured ourselves of our own jurisdiction, we proceed to address Magana-Magana's challenges to the merits of the BIA's determination that she failed to show extraordinary circumstances. Magana-Magana raises two arguments: (1) the BIA applied the wrong legal standard and (2) the BIA erred in concluding that she had not shown the requisite extraordinary circumstances. [7] We reject both arguments.

---

[7] We note that even if the Government were correct that we lack jurisdiction to review the BIA's extraordinary-circumstances determination—which it is not—we would still have jurisdiction to ensure that the BIA applied the correct legal standard in coming to its conclusion. *See Bonilla v. Lynch*, 840 F.3d 575, 588 (9th Cir. 2016)

## A. Whether the BIA Applied the Wrong Legal Standard

Magana-Magana contends that the BIA committed legal error because it erroneously applied a standard of "exceptional circumstances" rather than the correct statutory standard of "extraordinary circumstances."  Magana-Magana is correct that the BIA seemingly used the incorrect term at one point in its decision when it stated that she "ha[d] not presented sufficient evidence of *exceptional circumstances* to establish that her motion falls within the exception to the [one]-year filing requirement" for VAWA claims.  (Emphasis added).  But this misstatement does not mean that the BIA committed reversible legal error.

Viewed in context, the BIA committed a clerical error, at most.  The BIA *repeatedly* articulated the correct "extraordinary circumstances" standard and cited 8 U.S.C. § 1229a(c)(7)(C)(iv)(III).  Only once did the BIA improperly use the term "exceptional circumstances."  Viewing the BIA's decision as a whole, it is clear that the BIA understood the proper legal standard and applied it.  Accordingly, the BIA's use of "exceptional circumstances," even if erroneous, does not warrant reversal or remand.  *See Iraheta-Martinez v. Garland*, 12 F.4th 942, 960 (9th Cir. 2021) (concluding that although the BIA did not make the contours of its analysis "perfectly clear," it did "enough to convince us that it did, in fact," perform the proper analysis);

---

(concluding that we would have jurisdiction to determine whether "the Board relied on an incorrect legal premise" even if the ultimate question were unreviewable).  In other words, even if we lacked jurisdiction to reach Magana-Magana's second argument, we could nevertheless reach her first argument regarding whether the BIA applied the wrong legal standard.

*Alcaraz*, 384 F.3d at 1163 (concluding that a clerical error was not grounds for reversing a BIA decision because the reality was "clear from the record"); *see also Yuhua Guan v. Barr*, 794 F. App'x 657, 658 (9th Cir. 2020) (mem.) ("We also reject [the alien's] final argument that a typographical error in the BIA's decision requires remand. When the decision is read in context, it is clear that the BIA agreed with the IJ's analysis and denied [the alien's] claims. The BIA's decision was sufficient in all respects, and remand would be futile and unnecessary.").

## B. Merits of the Extraordinary-Circumstances Determination

Magana-Magana's next argument is that the BIA erred because her circumstances qualify as "extraordinary," particularly under the regulatory definition from the asylum context discussed in *Husyev*. Given the fact-bound nature of the mixed question at issue here, we apply a "deferential standard of review." *Wilkinson*, 601 U.S. at 222; *see also Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005) ("We review the BIA's denial of a motion to reopen and remand for abuse of discretion.").

Under that deferential standard, Magana-Magana cannot succeed. To begin, although the abuse inflicted on Magana-Magana by Wakefield (and her other partners) is no doubt tragic, abuse will be present in most, if not all, VAWA-based motions to reopen. The "extraordinary circumstances" demanded by the statute must constitute something more than abuse. *See Pena-Lopez*, 33 F.4th at 807 ("[W]hatever the precise contours of [the extraordinary-circumstances] standard, we can say confidently that the ordinary (terrible) circumstances of a VAWA-based motion to reopen and the usual hardships of a relocation do not suffice."); *cf. Alquijay*

*v. Garland*, 40 F.4th 1099, 1104 (9th Cir. 2022) ("[The petitioner] does not explain how, in the aggregate, his circumstances are different from the circumstances of many applicants who seek refuge in the United States . . . .").

In applying this standard to the facts here, the BIA did not abuse its discretion in concluding that the abuse suffered by Magana-Magana, however terrible, did not constitute the requisite "extraordinary circumstances." And even if the BIA abused its discretion in concluding that the violence that Magana-Magana suffered during her years with Wakefield was insufficient to constitute extraordinary circumstances, there is no basis in the record to conclude that extraordinary circumstances caused the substantial lapse of time (over a year) between the beginning of divorce proceedings and the filing of her motion to reopen. The BIA could have reasonably rejected Magana-Magana's argument that the trauma of the assault could justify her delay in filing the motion to reopen.

Moreover, that Magana-Magana has suffered from serious mental illnesses does not indicate that the BIA erred in applying the legal standard to her case, notwithstanding the definition of "extraordinary circumstances" in the asylum context. The BIA reviewed the medical records adduced by Magana-Magana and recognized her mental illness, but nevertheless concluded that she did not show extraordinary circumstances. This is not a case where the BIA ignored new, relevant evidence. *Cf. Agonafer v. Sessions*, 859 F.3d 1198, 1207 (9th Cir. 2017). Rather, the BIA considered the evidence and, applying the extraordinary- circumstances standard to the facts, concluded that the standard was not met. It did not abuse its broad discretion in doing so.

Magana-Magana further argues that the BIA erred in its consideration of the evidence because it "failed to provide a reasoned, detailed explanation for its actions."  This argument, too, is unavailing.  Although the BIA must "consider the issues raised[] and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted," it "does not have to write an exegesis on every contention."  *Id.* at 1206–07 (quoting *Lopez v. Ashcroft*, 366 F.3d 799, 807 n.6 (9th Cir. 2004)).  The BIA met this standard here: it recited Magana-Magana's new evidence, stated the proper standard, and explained why it thought that standard had not been met.  This is more than sufficient for us to conclude that the BIA carefully considered Magana-Magana's position.  *See Najmabadi v. Holder*, 597 F.3d 983, 990 (9th Cir. 2010); *cf. Agonafer*, 859 F.3d at 1207 (concluding that the BIA had failed to discharge this duty when it did not make clear that it had considered newly adduced evidence).**[8]**

### III.  Magana-Magana's Other Challenges

Finally, we turn briefly to Magana-Magana's other challenges to the BIA's decision.  Specifically, Magana-Magana argues that (1) the BIA should have applied the doctrine of equitable tolling to excuse the untimeliness of her petition and (2) the BIA erred in declining to reopen her motion *sua sponte*.  Neither argument succeeds.

---

[8] Magana-Magana's opening brief seems to argue that the BIA erred in considering her evidence cumulatively.  If so, this argument is frivolous—the BIA is *required* to consider the evidence cumulatively, at least in many contexts.  *See Salguero Sosa v. Garland*, 55 F.4th 1213, 1218 (9th Cir. 2022).  In any event, this perplexing argument seems to have been abandoned by the reply brief.  *Cf. Maciel v. Cate*, 731 F.3d 928, 932 n.4 (9th Cir. 2013).

## A. Equitable Tolling

Magana-Magana contends that the BIA should have applied the doctrine of equitable tolling to excuse the untimely filing of her motion to reopen. She contends that she is entitled to equitable tolling based mostly on trauma from Wakefield's abuse. But we need not even reach Magana-Magana's argument because, as the Government contends, she failed to exhaust this argument before the BIA.

We can review a decision of the BIA only if the alien "has exhausted all administrative remedies available to the alien as of right." *Arsdi v. Holder*, 659 F.3d 925, 928 (9th Cir. 2011) (quoting 8 U.S.C. § 1252(d)(1)). "Exhaustion requires a non-constitutional legal claim to the court on appeal to have first been raised in the administrative proceedings below, and to have been sufficient to put the BIA on notice of what was being challenged." *Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023) (quoting *Bare v. Barr*, 975 F.3d 952, 960 (9th Cir. 2020)). But "[a] petitioner 'need not use precise legal terminology to exhaust his claim.'" *Id.* (quoting *Arsdi*, 659 F.4th at 929). "'What matters is that the BIA was sufficiently on notice so that it "had an opportunity to pass on th[e] issue."'" *Id.* (alteration in original) (quoting *Bare*, 975 F.3d at 960).

It is undisputed that Magana-Magana did not make an equitable tolling argument to the BIA. But Magana-Magana argues that her request that the BIA categorize her circumstances as "extraordinary" and grant discretionary relief under 8 U.S.C. § 1229a(c)(7)(C)(iv)(III) was sufficient to put the BIA on notice of her equitable-tolling claim.

We disagree. Equitable tolling not only requires a petitioner to show that "some extraordinary circumstance stood in his way and prevented timely filing," but also that

the petitioner "has been pursuing his rights diligently." *Bent v. Garland*, 115 F.4th 934, 942 (9th Cir. 2024) (quoting *Holland v. Florida*, 560 U.S. 631, 634 (2010)). Magana-Magana never mentioned the concept of due diligence to the BIA, much less equitable tolling. Thus, even if Magana-Magana demonstrated extraordinary circumstances, she failed to put the BIA on notice of her equitable-tolling claim.

Magana-Magana relies on our opinion in *Socop-Gonzalez v. INS*, 272 F.3d 1176 (9th Cir. 2001) (en banc), *overruled on other grounds by Smith*, 953 F.3d 582, but *Socop-Gonzalez* does not help her case. It is true that, in *Socop-Gonzalez*, we concluded that an alien had exhausted an equitable-tolling claim even though those words were not used before the agency. 272 F.3d at 1183–84. But in that case, (1) the alien raised "precisely [the facts] needed to support an equitable tolling argument," as well as the related equitable-estoppel standard and (2) the BIA itself addressed the equitable issue. *See id.* at 1184–86. None of those circumstances is present here: it is beyond dispute that the BIA never addressed any kind of equitable relief.[9] Accordingly, we conclude that we cannot reach Magana-Magana's equitable-tolling argument because it is unexhausted.

---

[9] Moreover, we have repeatedly concluded, albeit in non-precedential decisions, that claims are not exhausted in circumstances like these notwithstanding *Socop-Gonzalez*. *See, e.g.*, *Fraihat v. Holder*, 439 F. App'x 597, 599 (9th Cir. 2011) (mem.); *Yumul v. INS*, 78 F. App'x 571, 572 (9th Cir. 2003) (mem.); *Marroquin v. INS*, 42 F. App'x 952, 953 (9th Cir. 2002) (mem.). We reach the same conclusion here.

We note that even if we were to reach equitable tolling, we would still deny the petition for review.[10]  We review the BIA's decision not to apply the equitable-tolling standard for an abuse of discretion.  *See Avagyan v. Holder*, 646 F.3d 672, 678 (9th Cir. 2011).  It is hard to see how the BIA could have abused its discretion in declining to apply equitable tolling here, particularly because equitable tolling requires a showing of due diligence.  Magana-Magana's petition to reopen was not simply slightly late due to circumstances outside of her control—to the contrary, it was *years* late.  Those years included years in which she was not living with or married to Wakefield.  *See Smith*, 953 F.3d at 598–99 ("[F]or a litigant to demonstrate 'he has been pursuing his rights diligently,' . . . he must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well . . . ." (quoting *Holland*, 560 U.S. at 649)).

## B.  *Sua Sponte* Reopening

Magana-Magana's final argument is that the BIA erred in declining to reopen her removal proceedings *sua sponte*. We conclude, however, that the BIA's decision of whether or not to reopen a removal proceeding *sua sponte* is a purely discretionary decision that we lack jurisdiction to review.

We have previously addressed this precise question.  *See Ekimian*, 303 F.3d at 1159.  The applicable regulation provides that "[t]he Board may at any time reopen or

---

[10] We assume without deciding that equitable tolling would be available for untimely petitions to reopen under the VAWA, which is an open question, *cf. Mata*, 576 U.S. at 149 n.3.  We do not reach the Government's argument that equitable tolling is only available in cases involving the ineffective assistance of counsel.

reconsider on its own motion any case in which it has rendered a decision." 8 C.F.R. § 1003.2(a). In *Ekimian*, we reasoned that the BIA's *sua sponte* reopening power was quintessentially discretionary and that there was no "sufficiently meaningful standard against which to judge the BIA's decision not to reopen." 303 F.3d at 1158–59.[11] We rejected the argument that Magana-Magana raises now— that the BIA's acknowledgment that it may, but is not required to, exercise its *sua sponte* authority in "exceptional situations" provides the requisite legal standard. *See id.*

Moreover, we have previously rejected Magana-Magana's argument that the Supreme Court's decision in *Kucana v. Holder*, 558 U.S. 233 (2010), effectively overruled *Ekimian*. *See Mejia-Hernandez v. Holder*, 633 F.3d 818, 824 (9th Cir. 2011) ("No significant changes have occurred since *Ekimian* that would allow this panel to find a sufficiently meaningful standard, and allow us to review sua sponte reopening."). And Magana-Magana has not pointed to any other authority casting doubt on *Ekimian*. We remain bound by it, and accordingly we lack jurisdiction to review the BIA's decision not to reopen removal proceedings *sua sponte*.

## CONCLUSION

We conclude that Lucila Magana-Magana is not entitled to the relief she seeks. We have jurisdiction to review the

---

[11] There is an exception to the general rule announced in *Ekimian*— courts retain jurisdiction to ensure that the BIA based its ruling on the proper legal premises. *See Bonilla*, 840 F.3d at 588. That exception, though, is seemingly inapplicable here, where Magana-Magana challenges simply whether there were sufficient circumstances to justify *sua sponte* reopening. And Magana-Magana makes no argument that this case falls within that exception.

BIA's determination that Magana-Magana had not shown the requisite extraordinary circumstances to justify excusing the untimeliness of her motion to reopen.  But the BIA did not abuse its discretion in concluding that the abuse suffered by Magana-Magana, although tragic, was insufficient to constitute extraordinary circumstances that would justify the untimeliness.  We also reject Magana-Magana's argument that the BIA applied the wrong legal standard.  Finally, we reject Magana-Magana's other arguments, concluding that she failed to exhaust her equitable-tolling argument and that we lack jurisdiction to review the BIA's discretionary decision not to reopen removal proceedings *sua sponte*.[12]

**PETITION FOR REVIEW DENIED IN PART AND DISMISSED IN PART.**

---

[12] The motion for a stay of removal is denied.  The temporary stay of removal expires when the mandate issues.