**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| LUIS GUILLERMO GONZALEZ-JUAREZ, | No. 21-927 |
| *Petitioner*, | Agency No. A201-173-391 |
| v. | OPINION |
| PAMELA BONDI, Attorney General, | |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 4, 2025[*]
Pasadena, California

Filed May 20, 2025

Before: Sandra S. Ikuta and Morgan B. Christen, Circuit
Judges, and Michael T. Liburdi, District Judge.[**]

Opinion by Judge Ikuta

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Michael T. Liburdi, United States District Judge for
the District of Arizona, sitting by designation.

SUMMARY***

**Immigration**

Denying Luis Guillermo Gonzalez-Juarez's petition for review of a decision of the Board of Immigration Appeals finding him ineligible for cancellation of removal, the panel held that: 1) the substantial evidence standard of review applies to the hardship determination in cancellation of removal cases; and 2) substantial evidence supported the BIA's hardship determination in this case.

For many years prior to the Supreme Court's decision in *Wilkinson v. Garland*, 601 U.S. 209 (2024), this court held that it lacked jurisdiction to consider whether an alien had established "exceptional and extremely unusual hardship" to a qualifying relative—a requirement for cancellation of removal. 8 U.S.C. § 1229b(b)(1)(D). In *Wilkinson*, the Supreme Court held that the application of this hardship standard to an established set of facts is a mixed question of law and fact over which courts have jurisdiction, but did not expressly state the standard of review.

In light of Supreme Court precedent, the panel concluded that, for review of immigration agency determinations on mixed questions of law and fact that are primarily factual, the court should adopt the standard of review that it generally applies to the agency's finding of facts: the substantial evidence standard. Under that standard, as relevant here, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to

---

*** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the contrary." 8 U.S.C. § 1252(b)(4)(B). The panel wrote that, in an analogous context presented in *Zia v. Garland*, 112 F.4th 1194 (9th Cir. 2024), this court applied the substantial evidence standard to the primarily factual question of whether a marriage was entered into in good faith.

The panel also observed that, since *Wilkinson*, this court has applied the abuse of discretion standard in two other contexts: *Martinez v. Clark,* 124 F.4th 775 (9th Cir. 2024) (habeas petition where mixed question was whether the alien was a danger to the community), and *Magana-Magana v. Bondi*, 129 F.4th 557 (9th Cir. 2025) (motion to reopen where mixed question was whether the alien qualified for an exception to the filing deadline). The panel concluded that neither case dictates the standard of review here, and observed that there is little practical difference between the two standards.

Turning to the meaning of "exceptional and extremely unusual hardship," the panel drew from dictionary definitions to conclude that the hardship must be out of the ordinary and exceedingly uncommon, and must deviate, in the extreme, from the norm. Thus, the agency must compare the hardship in a given case to the hardship that results in the ordinary course when an alien is removed.

Here, Gonzalez challenged the BIA's conclusion that country conditions reports on Mexico did not establish the requisite hardship to his two sons, who planned to accompany him to Mexico in the event of removal. The BIA was not persuaded that the relatively high levels of crime and violence in Mexico established the requisite hardship, and rejected the argument that Gonzalez and his sons would be the target of criminal violence due to their perceived

wealth. The panel concluded that substantial evidence supported these conclusions, explaining that Gonzalez's other family members had lived in Mexico without harm and that a country conditions report that applies equally to a large proportion of cases does not compel the conclusion that the hardship standard is met. The panel also rejected Gonzalez's argument that the BIA failed to consider the record evidence.

Accordingly, the panel concluded that substantial evidence supported the BIA's determination that Gonzalez had not met his burden to show that his removal would result in hardship to his qualifying relatives that is substantially different from or beyond that normally encountered in the course of removal.

## COUNSEL

Roxana V. Muro, Law Offices of Roxana V. Muro, Los Angeles, California, for Petitioner.

Zachary S. Hughbanks, Giovanni Di Maggio, and Jennifer P. Williams, Trial Attorneys; Lindsay B. Glauner, Senior Litigation Counsel; Song Park, Assistant Director; Office of Immigration Litigation; Brian Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

# OPINION

IKUTA, Circuit Judge:

Luis Guillermo Gonzalez-Juarez (Gonzalez) petitions for review of the decision of the Board of Immigration Appeals (BIA) that denied his application for cancellation of removal. Because the evidence does not compel the conclusion that his removal would result in "exceptional and extremely unusual hardship" to a qualifying relative, 8 U.S.C. § 1229b(b)(1)(D), we deny the petition.

I

We first consider the law applicable to this case. "The Attorney General may cancel removal" of "inadmissible or deportable" aliens in certain circumstances. *Id.* § 1229b(b). For an alien such as Gonzalez, who is not a lawful permanent resident of the United States, the cancellation of removal statute proceeds in two steps. First, the alien must meet the requirements of § 1229b(b)(1). Under this section, the alien must (A) have been physically present in the United States for a continuous period of ten years or more, (B) have been a person of good moral character during that time, (C) have not been convicted of certain enumerated offenses, and (D) "establish[] that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." *Id.* § 1229b(b)(1). Only the fourth criterion, whether the alien has established "exceptional and extremely unusual hardship" to a qualifying relative, is at issue in this appeal. Second, if the alien meets the four requirements and establishes eligibility under § 1229b(b)(1)(A)–(D), the agency may exercise its discretion to cancel the alien's

removal.[1]  *See id.* § 1229b(b)(1) ("The Attorney General *may* cancel removal . . . *if* the alien [meets the requirements of subparagraphs (A)–(D)]" (emphasis added)); *Wilkinson v. Garland*, 601 U.S. 209, 212–13 & n.1 (2024) (describing "two steps" of cancellation of removal).

## A

For many years, we held that we lacked jurisdiction to consider whether an alien had established "exceptional and extremely unusual hardship" to a qualifying relative under § 1229b(b)(1)(D).  *See, e.g.*, *Mendez-Castro v. Mukasey*, 552 F.3d 975, 981 (9th Cir. 2009); *Martinez-Rosas v.*

---

[1] Section 1229b(b)(1) provides, in full:

> (b) Cancellation of removal and adjustment of status for certain nonpermanent residents
>> (1) In general
>> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—
>>> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>>> (B) has been a person of good moral character during such period;
>>> (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and
>>> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b.

*Gonzales*, 424 F.3d 926, 930 (9th Cir. 2005). We based this conclusion on the statutory text. Congress deprived us of jurisdiction "to review: (i) any judgment regarding the granting of relief under section . . . 1229b [cancellation of removal]." 8 U.S.C. § 1252(a)(2)(B). There is an exception to this jurisdiction-stripping provision in § 1252(a)(2)(D): "[n]othing in [§ 1252(a)(2)(B)] . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." *Id.* § 1252(a)(2)(D). Reading these sections together, we concluded that whether the alien's qualifying relative suffered an "exceptional and extremely unusual hardship" was not a question of law pursuant to § 1252(a)(2)(D), but rather was a subjective question, depending on the identity and value judgment of the person examining the issue. *Mendez-Castro*, 552 F.3d at 981. We therefore concluded that we lacked jurisdiction to review an IJ's application of the "exceptional and extremely unusual hardship" standard to the facts of a case. *Id.*

But our decision in *Mendez-Castro* has been superseded by Supreme Court opinions. First, *Guerrero-Lasprilla v. Barr* held that "a question, which has both factual and legal elements" is a "mixed question of law and fact." 589 U.S. 221, 228 (2020). Therefore, the "statutory phrase 'questions of law'" for purposes of § 1252(a)(2)(D) "includes the application of a legal standard to undisputed or established facts." *Id.* at 227. Subsequently, *Wilkinson* addressed our jurisdiction over the exceptional and extremely unusual hardship standard, and held that the application of this standard "to an established set of facts" is a "mixed question

of law and fact," over which we have jurisdiction under § 1252(a)(2)(D).  601 U.S. at 212.[2]

B

*Wilkinson* did not expressly state what standard of review applies to our review of the agency's determination that an alien had not established exceptional and extremely unusual hardship to a qualifying relative.  We turn to that question now.

1

The Supreme Court provided guidance on how to determine the standard of review for a mixed question of law and fact in *Guerrero-Lasprilla*.  589 U.S. at 228.  When reviewing an "agency decision that applies a legal standard to underlying facts . . . . [t]he answer to the 'proper standard' question may turn on practical considerations, such as whether the question primarily 'require[s] courts to expound on the law, particularly by amplifying or elaborating on a broad legal standard' (often calling for review de novo), or rather 'immerse[s] courts in case-specific factual issues' (often calling for deferential review)."  *Id.* (quoting *U.S. Bank N.A. v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396

---

[2] Although we have jurisdiction over the "exceptional and extremely unusual hardship" standard, the IJ's second determination, "whether to exercise his discretion favorably and grant the noncitizen relief in the particular case," *Wilkinson*, 601 U.S. at 212–13, is not a question of law under § 1252(a)(2)(D), so our jurisdiction is precluded by § 1252(a)(2)(B)(i).  *Id.* at 218, 225 n.4.  Nor do we have jurisdiction over the IJ's finding of "facts underlying any determination on cancellation of removal," which "remain unreviewable."  *Id.* at 225.  For example, we may not review "an IJ's factfinding on credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides."  *Id.*

(2018)). *Wilkinson* described the exceptional and extremely unusual hardship determination as one that "requires a court to immerse itself in facts." 601 U.S. at 222; *see also id.* at 225 ("Because this mixed question is primarily factual, that review is deferential.").

In discussing the standard of review that applies to a mixed question of law and fact under § 1252(a)(2)(D), both *Wilkinson* and *Guerrero-Lasprilla* relied on *U.S. Bank*, 583 U.S. at 394. *Wilkinson*, 601 U.S. at 221–22; *Guerrero-Lasprilla,* 589 U.S. at 228. In *U.S. Bank*, the Court considered the standard of review applicable to a bankruptcy court's determination that a particular transaction had been entered at arm's length, which the Court determined was a mixed question of law and fact. 583 U.S. at 397. The Court first examined "the nature of the mixed question . . . and which kind of court (bankruptcy or appellate) is better suited to resolve it[.]" *Id.* at 395. Because "the standard of review often reflects which 'judicial actor is better positioned' to make the decision," the Court reasoned, "[t]he standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work." *Id.* at 395–96. When the answer requires an evaluation of "a raft of case-specific historical facts," and "[p]recious little" legal work, then the inquiry "(primarily) belongs[] in the court that has presided over the presentation of evidence, that has heard all the witnesses, and that has both the closest and the deepest understanding of the record." *Id.* at 397–98. Because the evaluation of case-specific historical facts is a task better suited to the bankruptcy court than the appellate court, *U.S. Bank* held that the appropriate standard of review of the bankruptcy court's decision of a mixed question of law and facts is clear error, which is the same standard of review

that an appellate court applies to a bankruptcy court's factual findings.  *Id.* at 394, 399.

Less than two years after *U.S. Bank*, the Supreme Court decided the standard of review applicable to another "primarily factual" mixed question in *Monasky v. Taglieri*, 589 U.S. 68, 71 (2020).  *Monasky* involved review of a district court's determination of a child's "habitual residence" under the Hague Convention on the Civil Aspects of International Child Abduction.  *Id.* at 70–71.  As in *U.S. Bank*, the Court asked whether the determination entailed "primarily legal or factual work," and found it presented "a task for factfinding courts, not appellate courts."  *Id.* at 84–85 (internal quotation marks and citation omitted).  Again the Court held that the applicable standard of review was clear error, the same standard of review that generally applies to a trial court's determination of "questions of fact."  *Id.* at 83–84.

As in *U.S. Bank* and *Monasky*, the exceptional and extremely unusual hardship determination is a mixed question that "is primarily factual."  *Wilkinson*, 601 U.S. at 225.  The description used in *U.S. Bank* fits here: determining whether a particular alien has demonstrated exceptional and extremely unusual hardship requires a court to examine "a raft of case-specific historical facts," and so "(primarily) belongs[] in the court that has presided over the presentation of evidence, that has heard all the witnesses, and that has both the closest and the deepest understanding of the record."  583 U.S. at 397–98.  Here, the court that has the closest connection to the facts is the immigration court, presided over by the IJ.

Although *U.S. Bank* held that the clear error standard applies in reviewing another court's factual finding, *id.* at

399, the Supreme Court has made clear that a different standard of review applies when a court reviews agency findings of fact ("court/agency" review) than when a court reviews a court's findings of fact ("court/court" review), *see Dickinson v. Zurko*, 527 U.S. 150, 153 (1999). In *Dickinson*, the Court held that the court/agency standard of review for findings of fact is the "substantial evidence" standard from the Administrative Procedure Act (APA), while the court/court standard is the "clearly erroneous" standard. *Id.* at 162. Both standards "require[] judges to apply logic and experience to an evidentiary record, whether that record was made in a court or by an agency." *Id.* at 163. *Dickinson* therefore held that a court should review the finding of facts made by the Patent and Trademark Office for substantial evidence. *Id.* at 165.

The APA does not apply to petitions for review under the Immigration and Nationality Act. *See Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (explaining that § 1252(a)(5) provides the "sole and exclusive" means of judicial review of an order of removal and prohibits APA claims). Nevertheless, *Dickinson* suggests that for a court/agency review of mixed questions of law and fact that are primarily factual, we should adopt the standard of review that we generally apply to an agency's finding of facts in the immigration context. 527 U.S. at 156–57. This standard of review for factual findings is the substantial evidence standard, as defined by statute and case law. Under § 1252(b)(4)(B), with exceptions not applicable here, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Nasrallah v. Barr*, 590 U.S. 573, 584 (2020) (defining the substantial evidence standard by quoting 8 U.S.C. § 1252(b)(4)(B));

*Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (same).

Applying the substantial evidence standard of review here is consistent with how we have long reviewed other eligibility determinations. *See, e.g.*, *Sharma v. Garland*, 9 F.4th 1052, 1060 (9th Cir. 2021) (stating that the agency's determination of ineligibility for withholding of removal is reviewed for substantial evidence); *Manzo-Fontes v. INS*, 53 F.3d 280, 282 (9th Cir. 1995) ("[I]f the agency denies relief because it determines that the alien is statutorily ineligible for relief, we generally review the agency's determination for substantial evidence."). We have explained that this highly deferential standard reflects the fact that "'the law entrusts the agency to make the basic' eligibility determinations." *Sharma*, 9 F.4th at 1060 (quoting *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002)).

In an analogous context, we took this approach and applied the substantial evidence standard of review to a mixed question of law and fact that is primarily factual. *See Zia v. Garland*, 112 F.4th 1194, 1202 (9th Cir. 2024). In *Zia*, the alien sought removal of the conditional basis for his permanent resident status based on the "hardship waiver" set forth in 8 U.S.C. § 1186a(c)(4). *Id.* at 1197. To qualify, he needed to show that he had entered into a qualifying marriage in good faith. *Id.* (citing 8 U.S.C. § 1186a(c)(4)(B)). The agency determined that he had not done so, and the alien therefore filed a petition for review. *Id.* at 1198–99. *Zia* first held that the good-faith marriage determination was a mixed question of law and fact over which the court had jurisdiction under *Wilkinson*. *Id.* at 1201. *Zia* then reviewed the agency's determination of this primarily factual question for substantial evidence. *See id.*

at 1202 ("[T]he remaining documentary evidence does not compel a conclusion that the BIA erred . . . .").

Accordingly, we implement *Wilkinson*'s directive to apply a deferential standard of review to the primarily factual mixed question at hand—whether the BIA erred in applying the exceptional and extremely unusual hardship standard to a given set of facts—by reviewing for substantial evidence.[3]

2

Since *Wilkinson*, we have applied a different standard of review in two other contexts, but neither is applicable here. *See Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024); *Magana-Magana v. Bondi*, 129 F.4th 557 (9th Cir. 2025).

*Martinez* involved a habeas petition from an alien who was detained pending removal proceedings under 8 U.S.C. § 1226(c). 124 F.4th at 780. The district court ordered the IJ to conduct a bond hearing under the Due Process Clause, at which the government had to "show by clear and

---

[3] Our conclusion is consistent with the Third Circuit's approach. On remand from the Supreme Court in *Wilkinson*, the Third Circuit analyzed *U.S. Bank* and *Monasky* and reasoned that "the deference afforded the agency's factual findings should also govern" review of the exceptional and extremely unusual hardship determination. *Wilkinson v. Attorney General*, 131 F.4th 134, 140 (3d Cir. 2025). The Third Circuit rejected the alien's argument that "the INA limits the substantial-evidence standard [of 8 U.S.C. § 1252(b)(4)(B)] to findings of fact." *Id.* at 140 n.28 (internal quotation marks omitted). According to the Third Circuit, this argument "lack[ed] textual support." *Id.* The Third Circuit went on to explain that even if the standard were so limited, "it would not matter because under *U.S. Bank*, we identify a standard for the mixed question by drawing from the standard applicable to factual findings." *Id.* The Third Circuit accordingly held that substantial evidence was the appropriate standard of review.

convincing evidence that [the alien] presents a flight risk or a danger to the community at the time of the bond hearing." *Id.* The IJ held the hearing and concluded that the government had satisfied its burden. *Id.* at 780–81. The BIA affirmed, and the alien filed a federal habeas petition under 28 U.S.C. § 2241, seeking release from custody and arguing that the agency had erred in concluding he was a danger to the community. *Id.* at 781. The district court denied the petition for habeas relief. *Id.* Relying on *Wilkinson*, we first concluded that we had jurisdiction over the alien's claim because the BIA's determination that the alien was a "danger to the community" was a question of law. *Id.* at 782–84. We recognized that "as a statutory matter, the detention process under § 1226(c) doesn't compare exactly to the cancellation-of-removal process, which requires the IJ to find the requisite 'hardship' at step one and to exercise discretion at step two." *Id.* at 784. But we distinguished the dangerousness determination in that case because it arose in the habeas context, and the district court had ordered the bond hearing under the Due Process Clause. *Id.*

Turning to the standard of review for a dangerousness determination, we noted that *Wilkinson* and *Zia* confirmed that we apply a deferential standard of review. *Id.* We relied on *Konou v. Holder*, which considered the standard of review for a determination that an alien's convictions constituted a "particularly serious crime" for purposes of 8 U.S.C. § 1231(b)(3)(B)(ii). 750 F.3d 1120, 1126–27 (9th Cir. 2014)*. Konou* held that the "BIA's determination that an alien was convicted of a particularly serious crime is a discretionary decision, and we review such decisions under an abuse-of-discretion standard." *Id.* at 1127. Because of the closeness of the "dangerousness" determination to the "particularly serious crime" determination, *Martinez* held

that it was appropriate for the district court to review "dangerousness" under an abuse-of-discretion standard. 124 F.4th at 784. But *Martinez*'s rationale does not map neatly onto the "exceptional and extremely unusual hardship" standard, which does not arise in the unique contexts of a habeas petition and court/court review, both of which lend themselves to review for abuse of discretion. *See, e.g.*, 28 *Carlson v. Landon*, 342 U.S. 524, 531–32 (1952) (reviewing an agency's bail determination under the Internal Security Act of 1950 for an abuse of discretion); *Barapind v. Reno*, 225 F.3d 1100, 1109 (9th Cir. 2000) (reviewing a district court's decision to dismiss a habeas petition under the federal comity doctrine for an abuse of discretion).

The second opinion, *Magana-Magana*, likewise involves a distinct context. This case addressed our jurisdiction over a battered spouse's application for a motion to reopen her immigration removal proceedings. 129 F.4th at 562. The immigration law allows such a motion if it is "filed within 1 year of the entry of the final order of removal, except that the Attorney General may, in the Attorney General's discretion, waive this time limitation in the case of an alien who demonstrates extraordinary circumstances or extreme hardship to the alien's child." 8 U.S.C. § 1229a(c)(7)(C)(iv)(III).[4]

In *Magana-Magana*, the alien filed a motion to reopen her removal proceedings "well outside of the one-year filing

---

[4] 8 U.S.C. § 1229a(c)(7)(C)(iv)(III) provides that "Any limitation under this section [§ 1229a(c)(7)(C)(iv)] on the deadlines for filing such motions shall not apply— . . . if the motion to reopen is filed within 1 year of the entry of the final order of removal, except that the Attorney General may, in the Attorney General's discretion, waive this time limitation in the case of an alien who demonstrates extraordinary circumstances or extreme hardship to the alien's child[.]"

period provided by statute." 129 F.4th at 564. The alien argued that under § 1229a(c)(7)(C)(iv)(III), the abuse she suffered "constituted extraordinary circumstances that should excuse her untimeliness." *Id.* The BIA determined that the alien's motion was untimely, and the alien had not demonstrated that she fell within the discretionary exception. *Id*. In evaluating the alien's petition for review, we first considered whether we had jurisdiction to review the BIA's "extraordinary circumstances" determination. *Id.* at 566. For purposes of this jurisdictional analysis, we held that "[t]he 'extraordinary circumstances or extreme hardship to the alien's child' standard in § 1229a(c)(7)(C)(iv)(III) is akin to the due-diligence standard analyzed in *Guerrero-Lasprilla* and the 'exceptional and extremely unusual hardship' standard analyzed in *Wilkinson,*" both of which involved "a legal standard that is applied to a set of facts." *Id.* at 570. Therefore, in light of *Guerrero-Lasprilla* and *Wilkinson*, we concluded that this determination was a mixed question of law and fact, and we had jurisdiction to review the BIA's determination whether the abuse constituted "extraordinary circumstances." *Id.* at 567–68.

Having "assured ourselves of our own jurisdiction," *id.* at 571, we turned to the merits of the question whether the alien demonstrated "extraordinary circumstances or extreme hardship to the alien's child," 8 U.S.C. § 1229a(c)(7)(C)(iv)(III). Because we were considering the denial of a motion to reopen, we relied on the deferential standard of review that we articulated in *Movsisian v. Ashcroft*, which held that "[w]e review the BIA's denial of a motion to reopen and remand for abuse of discretion." 395 F.3d 1095, 1098 (9th Cir. 2005). Under the abuse of discretion standard of review, we held that the alien in *Magana-Magana* could not succeed. 129 F.4th at 571.

Thus, *Magana-Magana*, like *Martinez*, does not dictate what the standard of review should be for the "exceptional and extremely unusual hardship" standard in § 1229b(b)(1)(D).

While neither *Martinez* nor *Magana-Magana* is directly contrary to *Zia*, we recognize that they take different approaches to applying *Wilkinson*'s deferential approach. But there is little practical difference between the abuse of discretion standard adopted in *Martinez* and *Magana-Magana* and the substantial evidence standard adopted by *Zia*.[5]  *Cf. United States v. Hill*, 196 F.3d 806, 808 (7th Cir. 1999) ("[W]hether deferential review is denominated for 'abuse of discretion' or 'clear error' or 'substantial evidence' . . . makes little practical difference."); *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed Rsrv. Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984) (explaining that when the APA's "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard performs the "function of assuring factual support, there is no substantive difference between what it requires and what would be required by the substantial evidence test") (emphasis omitted).  Therefore, we use the standard that more closely follows our circuit's longstanding approach for eligibility determinations and the Supreme Court's guidance in *U.S. Bank* and *Monasky*: the substantial evidence standard.

### C

Having determined our jurisdiction and standard of review, we next address the meaning of the hardship

---

[5] Whatever difference exists in this context is not a "compelling reason" to create a circuit split, *Padilla-Ramirez v. Bible*, 882 F.3d 826, 836 (9th Cir. 2017), given the Third Circuit's decision to review the hardship determination for substantial evidence, *Wilkinson*, 131 F.4th at 140.

standard set forth in § 1229b(b)(1)(D).  To qualify for cancellation of removal, the alien must show that his removal would result in a certain kind of hardship—"exceptional and extremely unusual"—to a qualifying relative.  8 U.S.C. § 1229b(b)(1)(D).  This language is not ambiguous. "Exceptional" means "out of the ordinary course, unusual, special." *Exceptional*, Oxford English Dictionary (OED) (2024), https://doi.org/10.1093/OED/6277146090.[6]  "Extremely" means "[i]n an extreme degree; exceedingly, very much." *Extremely*, OED (2023), https://doi.org/10.1093/OED/1068785790.  "Unusual" means "[n]ot usual; uncommon; exceptional." *Unusual*, OED (2023), https://doi.org/10.1093/OED/3122717619. Their legal definitions are no different. *See Exceptional*, Ballentine's Law Dictionary (3d ed. 1969) ("The rare—the unusual or extraordinary case or circumstance"); *Unusual*, Black's Law Dictionary (4th ed. 1951) ("[u]ncommon; not usual, rare"); *Extreme*, Black's Law Dictionary (4th ed. 1951) ("[g]reatest, highest, strongest, or the like").  These definitions are unchanged from when Congress used the phrase "exceptional and extremely unusual" in enacting the INA in 1952 and from when Congress enacted the current provision in 1996.[7]  *See Exceptional*, OED (first published

---

[6] This definition is unchanged from when it first entered the Oxford English Dictionary in 1894. *Exceptional*, OED (2024).

[7] The current statutory regime of cancellation of removal was enacted in 1996.  Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, sec. 304, 8 U.S.C. § 1229b, 110 Stat. 3009-594 (1996). However, the phrase "exceptional and extremely unusual hardship" was included in the original Immigration and Nationality Act in 1952 as the standard applicable to suspension of deportation.  Immigration and

1894; not yet revised); *Extremely*, OED (first published 1894; not yet revised); *Unusual*, OED (first published 1926; not yet revised); *accord Moctezuma-Reyes v. Garland*, 124 F.4th 416, 422 (6th Cir. 2024) (discussing dictionary definitions and concluding that "'exceptional and extremely unusual hardship' means hardship . . . that's significantly different from or greater than the hardship that a deported alien's family normally experiences"). Drawing from the dictionary definitions, then, the hardship must be out of the ordinary and exceedingly uncommon. It must deviate, in the extreme, from the norm. The agency must compare the hardship in a given case to the hardship that results in the usual, ordinary course when an alien is removed.

This is consistent with how the BIA applies this statute. *See In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (BIA 2001) (evaluating whether the alien's relatives "would suffer hardship that is substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here"). Although we no longer defer to an agency's interpretation of the meaning of a statutory text, we may "seek aid from the interpretations of those responsible for implementing particular statutes." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). While an agency's interpretation is not binding, it may be "especially informative to the extent it rests on factual premises within the agency's expertise." *Id.* at 402 (internal quotation marks, brackets, and citation omitted). In this case, the BIA is "responsible for implementing" § 1229b(b)(1)(D), *id.* at 394, and the factual premises

---

Nationality Act, Pub. L. No. 82-414, sec. 244, 8 U.S.C. § 155, 66 Stat. 163, 214 (1952).

underlying the cancellation of removal inquiry are "within the agency's expertise," *id.* at 402 (brackets omitted). Accordingly, while we are not bound by *Monreal-Aguinaga*, we find it instructive here.

When the BIA applies this statute, it evaluates "the ages, health, and circumstances" of qualifying relatives. *Monreal-Aguinaga*, 23 I. & N. Dec. at 63. In *Monreal-Aguinaga*, the BIA offered hypothetical examples of hardship that might meet the standard: elderly parents deprived of support by an alien on whom they are solely dependent, or a qualifying child "with very serious health issues" or "compelling special needs in school" who would be removed from supportive healthcare or educational environments. *Id.* But the BIA also noted: "A lower standard of living or adverse country conditions in the country of return . . . generally will be insufficient in themselves to support a finding of exceptional and extremely unusual hardship." *Id.* at 63–64. The BIA stated that the hardship must be "substantially beyond the ordinary hardship that would be expected when a close family member leaves the country." *Id.* at 62 (internal quotation marks omitted).

This comparative approach is likewise consistent with how we applied this test in our circuit before *Loper-Bright*. *See, e.g.*, *Cabrera-Alvarez v. Gonzales*, 423 F.3d 1006, 1013 (9th Cir. 2005) (explaining that the emotional suffering that results from the separation of parents from children is "sadly common" in the removal context and thus does not satisfy the exceptional and extremely unusual standard); *Chete Juarez v. Ashcroft*, 376 F.3d 944, 949 n.3 (9th Cir. 2004) (the hardship must be "substantially beyond that which would ordinarily be expected to result from the alien's deportation" (citation omitted)). We continue to apply such a comparative approach here.

## II

We now turn to the facts of this case to determine whether the BIA erred in denying cancellation of removal, reviewing its hardship determination for substantial evidence.

Gonzalez is a native and citizen of Mexico who entered the United States most recently in 1999. After the government commenced removal proceedings against him, Gonzalez conceded removability and applied for cancellation of removal. Relying primarily on country conditions reports about crime and violence in Mexico, the IJ granted Gonzalez's application for cancellation of removal. The BIA reversed, concluding that Gonzalez was not eligible for cancellation of removal because he had not demonstrated his removal would result in exceptional and extremely unusual hardship to a qualifying relative.

At the time of the IJ's decision, the record established the following. Gonzalez had three children. His daughter was an adult, who intended to stay in the United States to continue her college education. Gonzalez's two sons Jacob and Brian were 15 and 18, respectively, and qualified as children for purposes of the hardship determination. 8 U.S.C. § 1101(b)(1) (defining "child" as an "unmarried person under twenty-one years of age"). The sons planned to accompany Gonzalez and their mother to Mexico in the event of removal. The sons spoke some Spanish, though neither spoke it well, and they were close to their older sister. Additionally, Jacob had eczema that he treated with a topical cream.

On appeal, Gonzalez challenges the BIA's conclusion that the country conditions reports did not establish exceptional and extremely unusual hardship. Gonzalez also

contends that the BIA inadequately addressed the hardship that would result to Brian and Jacob given their ages, their lack of fluency in Spanish, and the financial impact of removal.  These arguments fail.

First, the BIA stated that it was "not persuaded that the relatively high levels of crime and violence in Mexico necessarily establishes the requisite level of hardship to the qualifying relatives, as such general conditions would apply to any qualifying relative who accompanies a noncitizen back to the country to which removal is ordered."  The BIA also rejected the argument that Gonzalez and his sons would be the target of criminal violence in Mexico.  The BIA reasoned that Gonzalez's perceived wealth would not increase the risk of criminal violence "enough to show that the hardship faced by the qualifying relatives is extraordinary."

Substantial evidence supports the BIA's conclusions.  As the BIA noted, Gonzalez's other family members had lived in Mexico without harm.  And as we have explained, the hardship determination requires hardship that deviates, in the extreme, from the hardship that ordinarily occurs in removal cases.  Thus, a country conditions report that applies equally to a large proportion of removal cases does not compel the conclusion that the hardship standard is met.

Second, Gonzalez's remaining argument—that the BIA failed to give meaningful consideration to Gonzalez's financial concerns, his sons' lost educational opportunities, their lack of fluency in Spanish, and their separation from their older sister—also fails.  While the BIA must consider all the evidence before it, "that does not mean that the Board must individually identify and discuss every piece of evidence in the record."  *Hernandez v. Garland*, 52 F.4th

757, 770 (9th Cir. 2022). In this case, the BIA recognized the "lost educational opportunities" that Gonzalez's sons would experience as a result of their lack of fluency in Spanish. It also recognized the sons' separation from their older sister. The BIA mentioned Gonzalez's concerns about finances, which encompass Gonzalez's likely inability to pay for his sons' college education if removed. Because the BIA discussed all evidence that was highly probative or potentially dispositive, we reject Gonzalez's argument that the BIA failed to consider the evidence in the record.

The BIA weighed the hardship to the sons against other ameliorating circumstances, such as "the presence of other family members in Mexico, the absence of serious health problems or special needs affecting the qualifying relatives, the children's ability to converse in Spanish, and approximately $10,000 in assets to help the family transition to life outside the United States." Considering the totality of the evidence, the BIA concluded that Gonzalez had not met his burden to show that "his removal would result in hardship to the qualifying relatives that is substantially different from or beyond that normally encountered in the course of removal."

Because substantial evidence supports the BIA's determination that Gonzalez failed to demonstrate exceptional and extremely unusual hardship to his qualifying relatives, the BIA did not err when it denied his application for cancellation of removal.

**PETITION DENIED.**